UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MANUEL PEREZ,

                              Plaintiff,

        — against —                                    **MEMORANDUM and ORDER**

CITY OF NEW YORK, SERGEANT                             01-CV-5384 (SLT)(MDG)
PHILIP MAHONEY, DETECTIVES LEROY
JACOBSON and ALAN MACPHERSON and
UNIDENTIFIED NEW YORK CITY POLICE OFFICERS,

                              Defendants.
------------------------------------------------------------------------X
**TOWNES, United States District Judge:**

        Plaintiff, Manuel Perez, brings this action pursuant to 42 U.S.C. § 1983 and other federal

and state laws, alleging that defendants violated his Constitutional rights in various respects.

Defendants City of New York and Alan Macpherson[1] (together, the "Defendants") now move for

summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth above, Defendants'

motion is granted in part and denied in part.

## BACKGROUND

        With the few exceptions noted below, the facts in this case are not in dispute. On

September 25, 1994, around 1:00 a.m., plaintiff was a passenger in a cab which was stopped by

police officers near 34th Avenue and 103rd Street in Queens, New York. Defendants' Statement

pursuant to Rule 56.1 ("Defendants' 56.1 Statement") at ¶ 1; Plaintiff's Statement pursuant to

Rule 56.1(b) ("Plaintiff's 56.1 Statement") at ¶ 1. The police asked the driver for his papers,

then asked both the driver and plaintiff to exit the cab. Defendants' 56.1 Statement at ¶¶ 2-3;

---

[1]Since Defendants' motion papers consistently spell Macpherson's name in this manner,
this Court will use this spelling rather than "MacPherson."

Plaintiff's 56.1 Statement at ¶¶ 2-3. As the two men waited outside the vehicle, the police searched, and recovered a gun from an area near the cab. Defendants' 56.1 Statement at ¶¶ 3-4; Plaintiff's 56.1 Statement at ¶¶ 3-4. Both men were arrested. Defendants' 56.1 Statement at ¶ 5; Plaintiff's 56.1 Statement at ¶ 5.

Plaintiff admits that, at some point during this encounter with the police, he provided the police with a fictitious name, "Luis Rodriguez." Defendants' 56.1 Statement at ¶ 6; Plaintiff's 56.1 Statement at ¶ 6. Plaintiff also contends that a detective – variously identified as either defendant Jacobson or a "Detective Jacobs"[2] – and other, unidentified police officers assaulted him, causing injury to his chin. Complaint at ¶ 19; Defendants' 56.1 Statement at ¶ 7; Plaintiff's 56.1 Statement at ¶ 7. In his complaint, plaintiff alleges that he also suffered an asthma attack following this assault, but that Detective Jacobson threatened to beat him if he insisted on going to the hospital. Complaint at ¶ 19. However, in Plaintiff's 56.1 Statement, he admits that he received medical attention at the precinct. Plaintiff's 56.1 Statement at ¶ 8.

According to plaintiff, defendant Jacobson questioned plaintiff at the precinct without first reading him *Miranda* warnings or securing a waiver of plaintiff's rights. Complaint at ¶ 19. Plaintiff further alleges that, although he told Jacobson that the gun was not his, Jacobson falsely represented that plaintiff had admitted finding the gun. *Id.*

Plaintiff was indicted in the Supreme Court of the State of New York, Queens County, for criminal possession of a weapon in the second degree. Defendants' 56.1 Statement at ¶ 9;

---

[2]Although plaintiff's complaint alleges that defendant Jacobson "physically . . . assaulted plaintiff by throwing plaintiff to the ground," Complaint at ¶ 19, Plaintiff's 56.1 Statement specifically asserts that a "Detective Jacobs" was "the aggressor." Plaintiff's 56.1 Statement at ¶ 7. Since Detective Jacobs is not a named defendant in this action, it seems likely that the reference to a "Detective Jacobs" in plaintiff's 56.1 Statement is a typographical error.

Plaintiff's 56.1 Statement at ¶ 9. Plaintiff subsequently moved to dismiss this indictment –
№ 4701/94 – and on June 19, 1995, Supreme Court Justice Evelyn Braun granted the motion.
Defendants' 56.1 Statement at ¶ 10; Plaintiff's 56.1 Statement at ¶ 10. Plaintiff was immediately
released from custody and remained at liberty until January 28, 1996. Defendants' 56.1
Statement at ¶¶ 10, 12; Plaintiff's 56.1 Statement at ¶¶ 10, 12.

While the parties agree that the prosecution successfully appealed Justice Braun's order
dismissing the indictment, Defendants' 56.1 Statement at ¶ 11; Plaintiff's 56.1 Statement at ¶ 11,
the parties disagree about the date on which the indictment was reinstated and whether this
reinstatement played any part in plaintiff's January 28, 1996, arrest. Defendants assert that
plaintiff was arrested on charges stemming from two unrelated matters, Defendants' 56.1
Statement at ¶ 12, and cite to a portion of plaintiff's *pro se* Supplemental Brief in which he
stated that Indictment № 4701/94 was not reinstated until January 21, 1997. *See* Exhibit C to the
Declaration of Concepcion A. Montoya, dated April 15, 2005 ("Montoya Declaration") at ¶ 5.
Plaintiff agrees that his January 28, 1996, arrest stemmed from the unrelated matters, but
maintains that his arrest also related to Indictment № 4701/94. Plaintiff's 56.1 Statement at
¶ 12.

At some point during the pendency of the indictment, the state court conducted a hearing
upon plaintiff's motion to suppress the gun as the fruit of an unlawful stop. Plaintiff asserts that
Jacobson falsely testified at a suppression hearing, misrepresenting the "circumstances of the
stop and arrest." Complaint at ¶ 21. Suppression was denied and on September 9, 1998,
plaintiff was convicted of criminal possession of a weapon in the third degree. *Id.* at ¶ 21.
Plaintiff was subsequently sentenced to a prison term of three and one-half to seven years. *Id.*

On March 19, 2001, the Appellate Division, Second Department, reversed this judgment of conviction, holding that the trial court had erred in denying plaintiff's motion to suppress. *See People v. Rodriguez*, 281 A.D.2d 565, 727 N.Y.S.2d 313 (N.Y. App. Div. 2 Dep't 2001). The Appellate Division found that the police lacked a "reasonable suspicion that [the] occupants [of the cab] had been engaged in, were presently engaged in, or were about to engage in criminal activity." *Id.*, 281 A.D.2d at 565-66, 727 N.Y.S.2d at 313. The Court therefore held that the gun, which was seized as a result of the stop, and the plaintiff's statements, which were made after the stop, should have been suppressed as fruits of the unlawful stop. *Id.*, 281 A.D.2d at 566, 727 N.Y.S.2d at 313.

Plaintiff was released from custody shortly after this decision. The exact date on which plaintiff was released is unclear; the Complaint alleges that plaintiff was released on March 19, 2001, Complaint at ¶ 23, but the parties agree in their Rule 56.1 statements that plaintiff was not released until June 2001. Defendants' 56.1 Statement at ¶ 14; Plaintiff's 56.1 Statement at ¶ 14. On May 23, 2001, Justice Steven Fisher of the Supreme Court, Queens County, dismissed Indictment № 4701/94. *See* Certificate of Disposition (Ex. E to the Montoya Declaration). The prosecution appealed the Appellate Division's decision, but without success. *See People v. William II*, 98 N.Y.2d 93, 745 N.Y.S.2d 792 (2002).

***The Complaint***

In August 2001, plaintiff – represented by one Thomas Sheehan, Esq. – commenced this action against the City of New York and police officers allegedly involved in the September 25, 1994, stop: Sergeant Philip Mahoney, Detectives Leroy Jacobson and Alan Macpherson, and other, "unidentified New York City police officers." The complaint alleges that Mahoney,

Jacobson and Macpherson were the officers who stopped the cab, and that plaintiff's arrest "was based on the false statements of Jacobson that he saw the plaintiff drop the gun out the window after the stop and . . . that plaintiff made a statement that he had found the gun."  Complaint at ¶ 19.  The complaint also alleges that "Macpherson lied and said he heard something fall to the ground," *id.*, but does not specifically allege when Macpherson made this statement or that it served as part of the basis for the arrest.

The complaint alleges that "Jacobson physically and unlawfully assaulted plaintiff by throwing plaintiff to the ground," thereby causing plaintiff's injuries.  *Id.*  The complaint does not allege that either Macpherson or Mahoney participated in the assault, but rather that they failed to intervene.  *Id.*  The complaint also alleges that Jacobson – not Macpherson or Mahoney – "violated plaintiff's right to remain silent and to counsel by interrogating plaintiff without Miranda warnings or waiver of rights," and that it was Jacobson who falsely claimed that plaintiff had admitted possessing the gun.  *Id.*

Although the complaint states that the action is brought pursuant to 42 U.S.C. § 1983, only the first of the complaint's seven causes of action expressly alleges a violation of that statute.  This first cause of action alleges that defendants violated (1) plaintiff's rights under the Fourth Amendment to due process and to be free from unreasonable searches and seizures and the unreasonable use of force; (2) plaintiff's rights under the Fifth Amendment to remain silent and to be represented by counsel; and (3) plaintiff's rights under the Fourteenth Amendment to equal protection and to be informed of the accusations against him.  In addition, plaintiff alleges that the individual defendants conspired to falsely arrest and maliciously prosecute him.

Although the remaining causes of action do not specifically mention § 1983, the fifth and sixth causes of action appear to raise § 1983 claims against defendants who were not directly

responsible for the deprivations of plaintiff's rights. Plaintiff's fifth cause of action alleges that unspecified "individual defendants failed in their affirmative duty to protect the constitutional right of Plaintiff from infringement by other law enforcement officers in their presence." Complaint at ¶ 50. The sixth cause of action alleges that the City of New York and the Unidentified Police Officers, "who were supervisors as a matter of policy and practice," were deliberately indifferent to the violation of plaintiff's constitutional rights and failed to discipline or train police officers, including the named defendants. *Id.* at ¶ 54-55. This cause of action specifically alleges that the City has a "policy and custom" of inadequately and improperly investigating civilian complaints of police misconduct, and a "policy" of giving "police officers suspected of criminally assaulting a civilian forty eight hours to delay in answering any questions." *Id.* at ¶¶ 61, 64.

The seventh cause of action raises claims pursuant to 42 U.S.C. § 1985 (2) and (3) and § 1986, alleging that the "individual defendant police officers" conspired with one another to deprive plaintiff of his constitutional rights, including the right to be free from false arrest and false imprisonment. Plaintiff specifically alleges that he is "a male of Hispanic ethnic origin," and that "defendants' conduct was motivated by racial animus." *Id.* at ¶ 72.

The remaining three causes of action raise various state-law claims. The second cause of action alleges that defendants "violated plaintiff's rights under New York law" in that "defendants assaulted Plaintiff; used force to arrest Plaintiff; falsely arrested, assaulted, imprisoned, detained Plaintiff; maliciously prosecuted Plaintiff; forced the Plaintiff to appear in criminal court; libeled and slandered Plaintiff; abused process against the Plaintiff; intentionally inflicted emotional distress upon the Plaintiff; invaded plaintiff's privacy; conspired against the Plaintiff; denied plaintiff his liberty under the laws and Constitution of the State of New York;

trespassed against Plaintiff; and otherwise violated plaintiff's rights under New York law." *Id.* at

¶ 36.   The third cause of action asserts that the City of New York was negligent and/or reckless

both in hiring and retaining the individual defendants, and in the training and supervision of

these defendants.  *Id.* at ¶ 40.  Finally, the fourth cause of action essentially alleges negligence

on the part of all defendants.  *Id.* at ¶ 45.

It is unclear whether Mr. Sheehan served all of the named defendants with this complaint.

The docket sheet indicates that only two returns of service have been filed.  The first return

indicates that on August 14, 2001, plaintiff caused a summons and the complaint to be served

upon the City of New York and the New York City Police Department (which is not a party to

this action).  The second return indicates that on August 20, 2001, plaintiff caused a summons

and complaint to be served upon Macpherson at the 115th Precinct in Queens.  However, nothing

on the docket sheet or in the Court's file indicates that any of the other defendants have been

served, and only the City of New York and Macpherson have answered the complaint.

**The Instant Motion**

In June 2005, the City of New York and Macpherson moved for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  These two defendants advance

seven arguments, which are discussed in detail below.

On August 15, 2005, before filing a response to Defendants' motion, Mr. Sheehan was

suspended from the practice of law.  *See In Matter of Sheehan*, 28 A.D.3d 96, 97, 808 N.Y.S.2d

556, 556 (N.Y. App. Div. 2d Dep't 2006).  Plaintiff never moved for an extension of time to

respond to Defendants' motion and on August 25, 2005, this Court dismissed the instant action

for failure to prosecute.  Although the action was reinstated upon plaintiff's *pro se* motion, Mr.

Sheehan was disbarred on February 14, 2006, without ever filing responsive papers. *See id.*, 28 A.D.3d at 98, 808 N.Y.S.2d at 557.

In March 2006, plaintiff moved to have counsel assigned to represent him. By order dated April 28, 2006, Magistrate Judge Go denied that motion, without prejudice to a further application following resolution of Defendants' motion for summary judgment. Plaintiff, with the capable assistance of a prison law clerk, has now filed his responsive papers. These papers largely respond to Defendants' arguments, but also request that this Court re-open discovery and stay Defendants' motion until plaintiff has had the opportunity "to conduct discovery on the defendants." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Memo") at 26.

## DISCUSSION

### *The Summary Judgment Standard*

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)*; Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World*, 922 F.2d at 121 (internal quotations and citations omitted). Moreover, the non-movant cannot rely on hearsay testimony which would

not be admissible if testified to at trial.  *See*, *e.g.*, *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999); Fed. R. Civ. P. 56(e).

### *Plaintiff's Motion to Re-open Discovery*

Before turning to the merits of Defendant's motion for summary judgment, this Court must first address plaintiff's motion to re-open discovery.  This Court notes that the deadline for factual discovery was originally set by Magistrate Judge Go for January 31, 2002.  This deadline was extended several times, most recently in late 2004.  Plaintiff was represented by counsel of his choice throughout the discovery period, and neither plaintiff nor his counsel requested a further extension of discovery in February 2005, when this Court set the briefing schedule for Defendants' motion for summary judgment.

Although plaintiff *pro se* has appeared in at least one conference before Magistrate Judge Go and has written several letters to this Court over the 16½-month period since plaintiff's counsel was suspended, plaintiff never raised any issue concerning deficiencies in discovery until he filed his response to the motion for summary judgment.  That response does not explain what additional discovery plaintiff seeks, but only that he wishes to have "the opportunity to conduct discovery on the defendants."  Plaintiff's Memo at 26.

Plaintiff's submission does not suggest any basis for re-opening discovery.  Moreover, as explained below, most of the arguments raised by Defendants in their motion for summary judgment are purely legal or are based on undisputed facts.  In the rare instances in which plaintiff might conceivably respond to Defendants' arguments by attempting to show a genuine issue of material fact, plaintiff already has the relevant documents or could obtain them without further discovery.  Accordingly, plaintiff's motion to stay Defendants' motion for summary judgment and to re-open discovery is denied.

### The Statute of Limitations

Defendants' first argument is that "plaintiff's claims, except for malicious prosecution, . . . are time-barred." Defendants' Memo at 6. Relying on Rule 12(h) of the Federal Rules of Civil Procedure, plaintiff responds by arguing, *inter alia*, that Defendants waived this argument by failing to move to dismiss the claims under Fed. R. Civ. P. 12 and failing to raise this statute of limitations as an affirmative defense in their answer.

As plaintiff correctly notes, a statute of limitations claim is waived if it is not raised in the answer to the complaint. *See*, *e.g.*, *United States v. Landau*, 155 F.3d 93, 107 (2d Cir. 1998) (citing *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 751-52 (2d Cir. 1992)). This waiver is not, however, dictated by Rule 12(h). Although Rule 12(h) "provides for an automatic waiver of certain defenses based on a failure to plead them, . . . that rule does not encompass the statute-of-limitations defense." *White-Ruiz v. City of New York*, Nº 93 Civ. 7233 (DLC)(MHD), 1996 WL 744892, at *2 (S.D.N.Y. Dec. 31, 1996). Rather, a claim that a statute of limitations bars a suit is an affirmative defense which, under Rule 8(a), must be raised in a responsive pleading. *See* Fed. R. Civ. P. 8(a). While nothing in Rule 8(a) expressly requires waiver of those affirmative defenses which are not raised in the answer, the Second Circuit and virtually every other federal court has long held that the "[f]ailure to plead an affirmative defense in the answer results in 'the waiver of that defense and its exclusion from the case.'" *United States v. Continental Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1253 (2d Cir. 1989) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984)); 5 Charles A. Wright & Arthur R. Miller, *Fed. Practice & Procedure* Civil 3d § 1278 (2004).

In this case, however, the two defendants who have answered the complaint have pled a statute of limitations defense. The sixth affirmative defense raised in the answer filed by

Defendants Alan Macpherson and the City of New York alleges that "[t]his action is barred in part by the applicable statute of limitations."  Plaintiff, therefore, lacks a factual basis to argue that Defendants waived the statute of limitations defense, and this Court must proceed to address the merits of Defendants' statute of limitations argument.

Although the heading which introduces this argument implies that all seven causes of action are time-barred, Defendants' argument itself addresses only plaintiff's § 1983 claims and claims of injury arising from the unlawful search.  The statute of limitations for actions under §1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits.  *Dory v. Ryan*, 999 F.2d 679, 681 (2d Cir. 1993) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)).  Since section 214(5) of New York's Civil Practice Law and Rules provides a three-year statute of limitations for personal injury actions, the statute of limitations for actions brought in this Court pursuant to §1983 is three years.  *Owens v. Okure*, 488 U.S. 235, 251 (1989); *Paige v. Police Dep't of City of Schenectady*, 264 F.3d 197, 199, n.2 (2d Cir. 2001).

The date on which an action accrues, however, is governed not by state law, but by federal law.  *See Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997); *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992).  Under federal law, an action generally accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002), *cert. denied*, 538 U.S. 922 (2003); *see also Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980), *cert. denied*, 450 U.S. 920 (1981).  Thus, generally speaking, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the harm" he or she has suffered.  *See Connolly v. McCall*, 254 F.3d 36, 41

(2d Cir. 2001) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

"However, in the case of some actions brought under § 1983, this general rule is subject to the Supreme Court's analysis in *Heck* [*v. Humphrey*, 512 U.S. 477 (1994)]." *Covington v. City of New York*, 171 F.3d 117, 121 (2d Cir.), *cert. denied*, 528 U.S. 946 (1999). *Heck* held that

> in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid,
> a § 1983 plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive order,
> declared invalid by a state tribunal . . ., or called into question by a
> federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 486-87. Thus, under *Heck*, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90.

A valid state conviction does not prevent a plaintiff from bringing all § 1983 claims; it only precludes those in which "a judgment in favor of the plaintiff would necessary imply the invalidity of his conviction or sentence." *Covington*, 171 F.3d at 122. Therefore, in order to determine when a § 1983 claim accrues, a court must engage in the "inherently . . . factual" inquiry into "whether a recovery on the § 1983 . . . claim . . . would necessarily imply the invalidity of any conviction or sentence resulting from the criminal proceedings . . . ." *Id.*

Although Defendants cite to *Covington*, they do so for the proposition that "a constitutional claim for false arrest accrues at the time of the arrest." Defendants' Memo at 6. This mischaracterizes the holding in *Covington*. In fact, the *Covington* Court engaged in a discussion of *Woods v. Candela*, 47 F.3d 545 (2d Cir. 1995) – a case very similar to the one at bar – in which the Court had concluded "that Wood's § 1983 claim (based on his false arrest) *did not accrue prior to the reversal of his conviction*." *Covington*, 171 F.3d at 123 (parentheses and

emphasis in original).

To be sure, it would be equally inaccurate to say that a § 1983 false arrest claim always accrues upon reversal of the plaintiff's conviction. As the *Covington* Court noted, the *Woods* result was "not inevitable in cases involving § 1983 claims based on an unlawful arrest." *Id.* (citing *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997) ("[A] wrongful arrest claim, like many Fourth Amendment claims, does not inevitably undermine a conviction because a plaintiff can wage a successful wrongful arrest claim and still have a perfectly valid conviction.")). However, since the appellate record contained no information concerning "the nature of the evidence which might have been available" against Covington, the Court was "unable to determine whether success on Covington's Section 1983 false arrest claim would necessarily imply the invalidity of a possible conviction resulting from the criminal proceedings instituted against him based on that arrest." *Id.* Accordingly, the Second Circuit remanded the case to the trial court to make that factual determination.

In this case, Defendants do not discuss the evidence which was presented against plaintiff at his trial for weapon possession, except to note that "the gun was produced." Defendants' Memo at 3. Accordingly, this Court, like the *Covington* Court, lacks the factual basis to determine whether recovery on any of plaintiff's § 1983 claims, or his claims of injury arising from the unlawful search, would have necessarily implied the invalidity of his conviction for criminal possession of a weapon in the third degree. Since Defendants have not met their burden of showing that there is no genuine issue of fact with respect to their statute of limitations defense, none of plaintiff's claims can be dismissed on statute of limitations grounds.

Even if Defendants had adduced facts concerning the evidence presented at plaintiff's

trial, the record strongly suggests that Defendants would be unable to establish that the false arrest claims or the claims arising from the unlawful search accrued at the time of the stop. As previously noted, this case is very similar to *Woods*, in which the plaintiff had been arrested and convicted of robbery and a weapons offense after a weapon and articles related to the robbery were found in his car following an automobile stop. The plaintiff's conviction was subsequently reversed on the ground that the police lacked reasonable suspicion to stop and question him. However, the plaintiff's subsequent § 1983 action was dismissed on statute of limitations grounds because it had not been brought within three years of the stop itself.

The Second Circuit affirmed this dismissal, *Woods*, 13 F.3d 574, 575-76 (2d Cir. 1994), but the Supreme Court reversed and remanded the case to the Second Circuit for reconsideration in the light of *Heck*. *See Woods v. Candela*, 513 U.S. 801 (1994). On remand, the Second Circuit noted that the state court had reversed Woods' conviction and dismissed the indictment after ruling that the police lacked reasonable suspicion to stop Woods and search his vehicle. Implicitly recognizing that success on Woods' false arrest claim would have implied the invalidity of his conviction, the Second Circuit, following the reasoning of *Heck*, held that Woods' § 1983 false arrest claim accrued at the time his conviction was reversed. *Woods v. Candela*, 47 F.3d at 546.

This case is very similar to *Woods* in that plaintiff's conviction was reversed, and his indictment dismissed, after the state court concluded that the police lacked reasonable suspicion to effect an automobile stop. As in *Woods*, recovery on plaintiff's § 1983 false arrest claim, or his claims of injury arising from the unlawful search, would have necessarily implied the invalidity of his conviction. Accordingly, these claims did not accrue until after plaintiff's conviction was reversed in 2001, a few months before this action was commenced. Defendants'

14

statute of limitations argument is, therefore, without merit.

### *General Municipal Law §§ 50-e and 50-i*

Defendants' second argument is that plaintiff's state-law claims must be dismissed because plaintiff has failed to comply with the notice-of-claim provisions of sections 50-e and 50-i of New York's General Municipal Law. Section 50-i provides, in relevant part, that

> [n]o action . . . shall be prosecuted or maintained against a city . . .
> for personal injury . . . or damage to real or personal property
> alleged to have been sustained by reason of the negligence or
> wrongful act of such city . . . or employee thereof, . . . unless (a) a
> notice of claim shall have been made and served upon the city . . .
> in compliance with [§ 50-e], (b) it shall appear by and as an
> allegation in the complaint or moving papers that at least thirty
> days have elapsed since the service of such notice and that
> adjustment or payment thereof has been neglected or refused, and
> (c) the action . . . shall be commenced within one year and ninety
> days after the happening of the event upon which the claim is
> based . . . .

N.Y. Gen. Mun. Law § 50-i(1). Section 50-e requires, *inter alia*, that

> [i]n any case founded upon tort where a notice of claim is required
> by law as a condition precedent to the commencement of an action
> . . . against a public corporation, as defined in the general
> construction law, or any officer, appointee or employee thereof,
> the notice of claim shall . . . be served . . . within ninety days after
> the claim arises . . . .

N.Y. Gen. Mun. Law § 50-e(a). Accordingly, "[i]n order to bring a state tort claim against a municipal entity or its employees acting in the scope of their employment, a plaintiff must serve a notice of claim . . . within ninety days of the incident giving rise to the claim and commence the action within a year and ninety days from the date on which the cause of action accrues." *Kreutzberg v. County of Suffolk*, № 04-CV-3835 (JS)(WDW), 2006 WL 3370351, at *3 (E.D.N.Y. Nov. 20, 2006).

Although this action is brought in federal court, these state notice-of-claim provisions

nonetheless apply to state-law claims. *See Hardy v. New York City Health & Hospitals Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). The notice-of-claim requirements are strictly construed; "[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *See id.* at 794. Moreover, since a notice of claim is a condition precedent to bringing tort claims against municipal corporations and their employees, "[t]he plaintiffs bear the burden of demonstrating compliance with the notice of claim requirement." *Henneberger v. County of Nassau*, ___F. Supp. 2d___, Nº 05-CV-3242 (JFB)(ARL), 2006 WL 3513123, at *16 (E.D.N.Y. Dec. 6, 2006) (citing *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006)).

In this case, Defendants argue that plaintiff cannot meet that burden with respect to all state claims except malicious prosecution because plaintiff did not serve his notice of claim until July 3, 2001. To substantiate their argument, Defendants have submitted a copy of plaintiff's notice of claim, which was signed on June 19, 2001, and bears a date stamp indicating that it was received by the City of New York on July 3, 2001. *See* Ex. F to Montoya Declaration. This submission is sufficient to meet Defendants' burden in moving for summary judgment under §§ 50-e and 50-i.

Although plaintiff's submissions allege that the notice of claim "was served upon the Comptroller of the City of New York on or about June 19, 2001" – not on July, 3, 2001 – this allegation is insufficient to create a genuine issue of material fact that would defeat summary judgment. The parties agree that the incident giving rise to plaintiff's state-law claims occurred on September 25, 1994. The majority of plaintiff's state law claims – including the claims for assault and use of excessive force – accrued on that date. Plaintiff's claim for false arrest and false imprisonment may not have accrued until June 19, 1995, when he was released from

confinement. *See, e.g., Avgush v. Town of Yorktown*, 303 A.D.2d 340, 341, 755 N.Y.S.2d 647, 647 (N.Y. App. Div. 2d Dep't 2003); *Spiegal v. City of New York*, № 84 Civ. 2622 (SWK), 1985 WL 3395, at *2 (S.D.N.Y. Oct. 18, 1985). However, plaintiff's notice of claim was not filed until 2001.

Plaintiff has not advanced any argument to counter Defendants' claim that his state actions – with the exception of malicious prosecution – accrued, at the latest, in 1995.[3] Therefore, regardless of whether the notice of claim was filed on June 19 or July 3, 2001, that notice was untimely. *See* N.Y. Gen. Muni. Law § 50-e. Accordingly, all of plaintiff's state-law claims, except his malicious prosecution claim, are dismissed.

### Malicious Prosecution

In their third argument, Defendants seek summary judgment on plaintiff's malicious prosecution claim, arguing that plaintiff cannot adduce evidence sufficient to rebut the presumption of probable cause created by the grand jury indictment of plaintiff. *See* Defendants' Memo at 10-11. For the reasons set forth below, this portion of Defendants' motion is granted.

In order to prevail on a claim of malicious prosecution, plaintiff must prove four elements: that the defendant (1) initiated a criminal proceeding; (2) with malice but (3) without probable cause, and (4) that the prosecution terminated favorably to the plaintiff. *See Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003); *see also Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (citing cases). The absence of probable cause is, therefore, "an essential

---

[3]Indeed, plaintiff's only attempt to rebut this argument is contained in an unauthorized sur-reply, which this Court declines to consider. However, even this argument does not contest the fact that his claims are untimely. Rather, plaintiff misapprehends the nature of Defendants' argument – which challenges only the state-law claims set forth in plaintiff's second, third and fourth causes of action – and argues that plaintiff's § 1983 claims (set forth in the first cause of action) are not subject to the notice-of-claim requirement.

element of a claim for malicious prosecution." *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir.

2006) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 (1983)).

An indictment by a grand jury creates a presumption of probable cause. *See*, *e.g.*, *id.*;

*Rothstein*, 373 F.3d at 282-83. That presumption may be overcome, but "only by evidence

establishing that the police witnesses have not made a complete and full statement of facts either

to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence,

that they have withheld evidence or otherwise acted in bad faith." *Rothstein*, 373 F.3d at 283

(quoting *Colon*, 60 N.Y.2d at 82-83, 468 N.Y.S.2d at 455-56). Thus, "[i]f plaintiff is to succeed

in his malicious prosecution action after he has been indicted, he must establish that the

indictment was produced by fraud, perjury, the suppression of evidence or other police conduct

undertaken in bad faith." *McClellan*, 439 F.3d at 145 (quoting *Colon*, 60 N.Y.2d at 83, 468

N.Y.S.2d at 456).

"The burden of rebutting the presumption of probable cause requires the plaintiff to

establish what occurred in the grand jury, and to further establish that those circumstances

warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts

judicially[.]'" *Rothstein*, 373 F.3d at 284 (quoting *Colon*, 60 N.Y.2d at 82, 468 N.Y.S.2d at 455).

When the plaintiff neither adduces proof concerning the content of the defendants' grand jury

testimony, nor has any personal knowledge of what happened before the grand jury, an argument

that the defendants "must have testified falsely to the grand jury amounts to rank speculation."

*Id.*

In this case, plaintiff has not adduced proof of what happened in the grand jury.

Although Plaintiff's Memo cites to the "Grand jury testimony of Defendants" in support of the

proposition that "defendants falsely testified that they saw Plaintiff throw the weapon from the

taxicab," Plaintiff's Memo at 11, plaintiff does not provide copies of the grand jury transcripts or identify the specific defendants who testified to this effect. Moreover, there are at least two reasons to suspect that plaintiff lacks personal knowledge concerning the substance of the individual defendants' grand jury testimony. First, Plaintiff's Memo states that "the defendants falsely testified that they saw Plaintiff throw the weapon from the taxicab, *which they alleged was the basis for the stop*." *Id.* at 11 (emphasis added). However, the appellate record indicates that the individual defendants testified at the suppression hearing that they stopped the cab because plaintiff met a two-hour-old description of a man with a gun, and that they observed plaintiff dropping the gun from the cab *after* the stop. *See Williams II*, 98 N.Y.2d at 98, 745 N.Y.S.2d at 794.

Second, Plaintiff's affirmation in opposition to Defendants' motion for summary judgment ("Plaintiff's Affirmation") states, "*[u]pon information and belief*, the defendants falsely testified before a Grand Jury in order to obtain an indictment." *Id.* at ¶ 23 (emphasis added). Plaintiff states that the "source of [his] information" is "a hearing conducted in a criminal court in which the charges were dismissed for lack of probable cause," *id.,* but does not provide a copy of the "criminal court" decision or any information concerning the basis for dismissing the charges. Even assuming that the indictment was dismissed due to some police misconduct before the grand jury, the indictment was subsequently reinstated on appeal. Plaintiff's Affirmation, therefore, does not provide any evidence of perjury before the grand jury.

Plaintiff also attempts to establish bad faith on the part of defendants by alleging facts to suggest that "the defendants" have a vendetta against him. While plaintiff's affirmation lists several prior occasions on which "the defendants" arrested him and filed charges against him that were subsequently dismissed, plaintiff does not specifically identify the particular

defendants who were allegedly involved in the prior incidents. This lack of specificity does not appear to be due to mere oversight, since plaintiff has previously filed actions in this court in which he accused a Detective Hendrix – not a defendant in this action – of the very actions which he now attributes to "the defendants." For example, plaintiff implies that defendants were responsible for two arrests in early 1996, and that the charges in both cases were dismissed. Plaintiff's Affirmation at ¶ 9. However, in a prior case, plaintiff alleged that it was Detective Hendrix who arrested plaintiff on January 28, 1996, and caused him to be arrested for another crime in February 1996. *See Perez v. NYC Police Dep't*, № 04-CV-1671 (FB), slip op. at 2 (E.D.N.Y. June 25, 2004). Similarly, although plaintiff now alleges that "the defendants" visited him at Mid-Hudson Psychiatric Facility on June 23, 2003, and attempted to coerce him into confessing to crimes he did not commit, Plaintiff's Affirmation at ¶ 8, he attributed these actions to Detective Hendrix in two prior cases. *See id.* at 4; *Perez v. Hendrix*, № 05-CV-2709 (SLT), 2005 WL 1798386, at *1 (E.D.N.Y. July 15, 2005).

To be sure, courts have found "bad faith" on the part of police officers who, "knowing that no crime has been committed, press[] the prosecution of criminal charges 'solely in order to further [the officer's] own personal goals.'" *McClellan*, 439 F.3d at 146 (quoting *Marshall v. Sullivan*, 105 F.3d 47, 55 (2d Cir. 1996)). However, in those cases, there was ample evidence of specific acts on the part of the defendants. In *McClellan*, the Second Circuit found that a plaintiff had adequately raised an issue of whether an officer acted in bad faith by adducing evidence that an officer instigated an altercation with the plaintiff, may have been intoxicated at the time, lied to the arresting officer about the plaintiff's responsibility for the altercation, admittedly was displeased when the first grand jury refused to indict the plaintiff, supervised the investigation despite his obvious conflict of interest, re-assigned the case because the officer

originally assigned "wasn't handling the investigation properly," urged the district attorney to

apply to re-present the case, pressured the prosecutor to offer "a deal" in exchange for testimony

against the plaintiff, procured the sole witness whose testimony enabled the case to be presented

to the second grand jury, and altered his testimony before the second grand jury. *Id.* at 146. In

*Marshall*, there was evidence that, although the complainant did not want to press charges, the

defendant, "improperly motivated by his own recent career failures and demotion, forced [the

complainant] to press charges solely in order to further [the defendant's] own career goals."

*Marshall*, 105 F.3d at 55.

In contrast, plaintiff in this case appears to be purposely vague about which "defendants"

previously arrested plaintiff. Accordingly, this Court concludes that plaintiff has not adduced

evidence sufficient to rebut the presumption of probable cause. Defendants' motion to dismiss

plaintiff's malicious prosecution claim is, therefore, granted.

### Defendants' Arguments Pursuant to *Townes v. City of New York*

Defendants' fourth and sixth arguments both principally rely on *Townes v. City of New*

*York,* 176 F.3d 138 (2d Cir.), *cert. denied*, 528 U.S. 964 (1999), a case which is similar to the

one at bar in many respects. In *Townes*, as here, the plaintiff was arrested after police, acting

without probable cause, stopped a taxicab in which the plaintiff was riding. The police found

two handguns secreted in the cab and cocaine on the plaintiff's person, and the plaintiff was

subsequently charged with two counts criminal possession of a weapon in the third degree and

one count of criminal possession of a controlled substance in the seventh degree. After a trial

court denied the plaintiff's motions to suppress the guns and the cocaine, the plaintiff pled guilty.

He served more than two years in prison before the Appellate Division reversed his conviction

and remanded the case for a new suppression hearing, following which the plaintiff's indictment was dismissed.

*Townes* differed from the instant action, however, in two significant respects. First, the plaintiff's § 1983 action in that case asserted only Fourth Amendment violations arising from the defendants' unlawful stop of the taxicab and subsequent search of the plaintiff's person. Second, the action did not seek to recover damages for the stop and seizure, but solely for the plaintiff's subsequent conviction and imprisonment. *Id.* at 145.

The *Townes* Court held that the plaintiff could not recover damages for his wrongful conviction and imprisonment. The Court first disposed of the plaintiff's argument that "the fruit of the poisonous tree doctrine" could somehow be used to connect the defendants' unlawful actions to the injuries stemming from the conviction and imprisonment, noting that the doctrine was inapplicable to § 1983 actions. The Court noted that doctrine was "calculated to deter future unlawful police conduct," *id.* at 145 (internal quotations omitted), and that since the deterrence objective had already been achieved through suppression of the unlawfully obtained evidence, permitting the plaintiff to proceed "solely on a fruit of the poisonous tree theory of damages would vastly overdeter state actors . . . ." *Id.* at 146.

Noting that § 1983 actions are analogous to state tort actions, the Court then addressed the issue of whether the unlawful police actions were a proximate cause of the plaintiff's conviction and incarceration. The Court held that they were not, saying:

> It is arguable that such seizures and searches could forseeably
> cause the discovery of inculpatory evidence, but as a matter of law,
> the unconstitutional seizure and search of Townes's person was
> not a proximate cause of his conviction because of (at least) one
> critical circumstance: the trial court's refusal to suppress the
> evidence, which is an intervening and superseding cause of
> Townes's conviction.

*Id.* at 146.  The Court considered it "well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment" – "[a]t least . . . in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment." *Id.* at 147.  Accordingly, the Court held that the plaintiff could not recover for his conviction or imprisonment.

Defendants in this case advance two arguments based on *Townes*.  The first of these arguments is confusing, not least because the caption appears to have nothing whatsoever to do with the argument itself.  The caption reads, "Defendant City is not estopped by the reversal of plaintiff's conviction on the grounds that the gun and plaintiff's statements should have been suppressed."  Defendants' Memo at 11.  However, the argument itself makes no reference to estoppel, but asserts, based solely on *Townes*, that "to the extent the complaints [sic] purportedly assert claims for false arrest and malicious prosecution, and seeks money damages, they must be dismissed as a matter of law."  Defendants' Memo at 12.

*Townes* does not support this broad proposition.  Townes did not expressly raise a false arrest claim, and it was unclear from Townes's complaint whether he sought compensatory damages for his arrest and pre-arraignment detention.  *Townes*, 176 F.3d at 149.  However, the Second Circuit stated that, even if he had sought such damages, Townes could not recover them because the police had probable cause to arrest him.  *Id.*  The Second Circuit did not hold or even imply that suppression of evidence and release from prison were the only remedies to which plaintiff was entitled.  Indeed, the Second Circuit implied that, absent probable cause to arrest, the common law tort of false arrest might allow a plaintiff to recover damages for

confinement, albeit only for confinement from "the time of detention up until issuance of process or arraignment." *Id.*

Similarly, the Second Circuit noted that Townes did not "plead conduct tantamount to malicious prosecution or false imprisonment," but only alleged a violation of his Fourth Amendment right to be free from unreasonable search and seizure. *Id.* at 147. The *Townes* Court implied that a claim for malicious prosecution was an avenue – indeed, the only avenue – to recover "damages for confinement imposed pursuant to legal process," and that plaintiff could not recover for such process because he had not "allege[d] conduct equivalent to malicious prosecution." *Id.* at 149. Therefore, nothing in *Townes* implies that someone in plaintiff's position could not recover for malicious prosecution.

Defendants' second *Townes*-related argument – that plaintiff cannot recover any damages for his conviction or imprisonment – has considerably more merit. This Court has already determined that plaintiff has not overcome the presumption of probable cause arising from his indictment and, therefore, cannot make out an essential element of malicious prosecution. As noted above, *Townes* implies that a claim for malicious prosecution is the only avenue to recover "damages for confinement imposed pursuant to legal process." *Id.*[4] Accordingly, plaintiff cannot recover for his conviction or post-arraignment imprisonment.

### Qualified Immunity

Defendants' fifth argument is that defendant Macpherson is entitled to qualified

---

[4]Indeed, the Second Circuit also notes that some jurists "argue that no common-law tort action, not even one alleging malicious prosecution, would allow for recovery of damages relating to a conviction." *Townes*, 176 F.3d at 149, n. 7 (citing *Heck*, 512 U.S. at 484, nn. 4-5; *id.*, 512 U.S. at 495-96 (Souter, J., concurring)).

immunity. It is unclear, however, which claims Defendants seek to dismiss on this ground. The heading to this argument asserts that "Defendant Macpherson is entitled to qualified immunity from liability for all claims against him." Defendants' Memo at 12. In contrast, the argument itself concludes that "defendant Macpherson is entitled to qualified immunity for plaintiff's arrest and prosecution because, at a minimum, arguable probable cause existed." *Id.* at 15.

Qualified immunity is "an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). "To establish this defense at the summary judgment stage, . . . officers must show upon facts that are undisputed *either* that [their] conduct did not violate clearly established rights of which a reasonable person would have known, or that it was objectively reasonable to believe that [their] acts did not violate these clearly established rights." *Soares v. State of Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993) (internal quotations and citations omitted; bracketed material and emphasis in original).

In this case, Defendants argue that Macpherson had "arguable" probable cause to arrest plaintiff, implying that it was objectively reasonable for Macpherson to believe that the arrest did not violate plaintiff's clearly established rights. Defendants' Memo at 14. Although Defendants do not specifically articulate the claims and rights implicated in this argument, the reference to "probable cause" and the argument's concluding sentence – asserting that "defendant Macpherson is entitled to qualified immunity for plaintiff's arrest and prosecution," Defendants' Memo at 15 – suggest that this argument relates solely to that portion of plaintiff's § 1983 claim which alleges that he was "unlawfully seized, detained, . . . arrested, [and] imprisoned" in

violation of his Fourth Amendment rights. Complaint at ¶ 25. "[I]t is settled that a person has a clearly established right not to be arrested or prosecuted without probable cause." *Soares*, 8 F.3d at 920 (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991), *cert. denied sub nom. Lillis v. Golino*, 505 U.S. 1221 (1992)). However, if there is probable cause for the arrest, no constitutional violation of the plaintiff's Fourth Amendment rights has occurred. *See id.*

"A police officer is entitled to qualified immunity as a matter of law if the evidence shows 'either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met.'" *Thomas v. County of Putman*, 262 F. Supp. 2d 241, 247 (S.D.N.Y. 2003) (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)). Thus, even in the absence of actual probable cause, an officer is immune from liability if there is "arguable probable cause," which exists "when 'a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law.'" *Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) (quoting *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997)). Accordingly, the determination of whether there was arguable probable cause, like the probable cause determination, rests on factual issues of what the officer knew at the time of the arrest.

Here, Defendants have not established through undisputed evidence what Macpherson knew at the time of the arrest, or that this information established probable cause to arrest plaintiff. Defendants allege that plaintiff was arrested shortly after "a search of the area within the cab's vicinity led to the discovery of the gun," Defendants' Memo at 15, and imply that this was the sole basis for plaintiff's arrest. However, the only evidence which defendants cite in

support of this proposition is (1) paragraph 19 of plaintiff's complaint, in which plaintiff alleges that the arrest was based solely on false statements by Jacobson and Macpherson, and (2) excerpts from a deposition in which plaintiff testified that, after arriving at the precinct, unspecified officers "said they found a pistol or a gun in the grass around the sidewalk," but that plaintiff himself did not observe the officer recover anything. Deposition of Manuel Perez (Ex. B to Montoya Declaration) at 80.

This evidence not only fails to substantiate Defendants' claim as to the basis for plaintiff's arrest, but contradicts it. Indeed, the evidence cited by Defendants suggests that there is a genuine issue of material fact as to whether the gun was actually recovered near the cab. Plaintiff's deposition testimony implies that the detectives fabricated their accounts of recovering a gun; plaintiff, who was present at the time the detectives searched the vicinity of the cab, testified that he never saw them recover anything and was never shown the pistol. *Id.* Moreover, plaintiff testified that he was not even informed that a gun had been recovered until after he reached the precinct. *Id.* Therefore, even if Defendants adduced evidence to show that plaintiff's arrest was based on the recovery of a gun in the vicinity of the cab, plaintiff's own testimony would be sufficient to raise a factual issue as to whether the police claims of recovering the gun were false. *See Soares*, 8 F.3d at 920 (a plaintiff can demonstrate a violation of his clearly established right not to be arrested or prosecuted without probable cause by demonstrating that the factual basis for probable cause was knowingly and intentionally fabricated). Accordingly, Defendants have not met their burden of establishing that Macpherson is entitled to qualified immunity as to any of the claims against him.

***The § 1983 Claims Against Defendant City of New York***

Defendants seventh and final argument is that plaintiff has failed to state a § 1983 claim against the City of New York because he has not identified a municipal policy or practice that was the "moving force [behind] the constitutional violation." Defendants' Memo at 17 (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)). It is well established that in order to state a claim against a city, plaintiff must allege a constitutional violation by a municipal employee resulting from a custom, policy or practice of the municipality. *See Richardson v. Nassau County*, 277 F. Supp. 2d 196, 204 (E.D.N.Y. 2003) (citing *Monell*, 436 U.S. at 694; *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). Plaintiff's complaint specifically alleges two such customs, policies and practices: a "policy and custom" of inadequately and improperly investigating civilian complaints of police misconduct, and a "policy" of giving "police officers suspected of criminally assaulting a civilian forty eight hours to delay in answering any questions." Complaint at ¶¶ 61, 64. However, plaintiff not only fails to offer any evidence to substantiate these allegations, but fails to establish that any of the constitutional violations he alleges flow from the purported customs and policies.

First, although the complaint itself specifically alleges facts from which these customs and policies might be inferred, plaintiff does not offer any evidence to substantiate these allegations. Specifically, plaintiff does not offer anything to support the allegation, contained in paragraph 62 of the complaint, that there is "no degree/level of punishment between thirty days suspension and dismissal," and that "dismissal is almost always held to be too harsh." Similarly, plaintiff offers no evidence to support the allegation in paragraph 61 of the complaint that at least 18,336 complaints were filed with the Civilian Complaint Review Board between 1993 and 1996, but that these resulted in the dismissal of only one police officer. Instead, plaintiff merely

observes that many, similar § 1983 actions have been filed against the City and references three incidents in which police shot unarmed civilians. Plaintiff's Memo at 22-24.

These observations and references do not substantiate the allegations in plaintiff's complaint. Although at least two of the three shootings to which plaintiff alludes were subjected to extensive scrutiny and thorough investigation, plaintiff does not present any evidence that the shootings were a result of lax discipline or poor training. Moreover, the fact that many other plaintiffs have sought to advance § 1983 claims against the City does not suffice to establish a municipal custom of ignoring civil rights violations on the part of its police employees. Indeed, many § 1983 claims brought against the City and/or City agencies – including at least two claims brought by plaintiff himself – have been dismissed for failure to allege or establish a municipal custom, practice or policy. *See Perez v. New York City Police*, 234 F.3d 1262, 2000 WL 1715248, at *2 (2d Cir. Nov. 13, 2000); *Perez v. NYC Police Dep't*, № 04-CV-1671 (FB), slip op. at 8-9 (E.D.N.Y. June 25, 2004).

Moreover, even if plaintiff could adduce facts to establish the customs and policies alleged in the complaint, he could not establish that these customs and policies resulted in the constitutional violations which he alleges. Plaintiff's complaint does not allege that he or anyone else filed complaints against the named defendants with the Civilian Complaint Review Board or that any of the named defendants were given 48 hours to answer questions relating to such complaints. In the absence of any evidence to suggest that customs or policies pertaining to civilian complaints were a proximate cause of the officers' alleged actions in this case, plaintiff's § 1983 claims against the City of New York shall be dismissed.

## CONCLUSION

For the reasons set forth above, all of plaintiff's state-law claims, including his claims for

false arrest and malicious prosecution, are dismissed.  Plaintiff's § 1983 claims against defendant

City of New York are also dismissed, but his § 1983 claims against defendant Macpherson

survive.  Plaintiff may not recover for his wrongful conviction or imprisonment.  However,

plaintiff may still seek to recover damages for his pre-arraignment detention on the theory that

defendants violated his Fourth Amendment right to be free from unlawful searches and seizures.

**SO ORDERED.**

_____/s/_____
SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
        December 29, 2006